1

1                  UNITED STATES DISTRICT COURT

2                 WESTERN DISTRICT OF LOUISIANA

3                      ALEXANDRIA DIVISION

4   UNITED STATES OF AMERICA          *    CRIMINAL ACTION
                                      *    NUMBER 07-10030-01
5                                     *
    vs.                               *    January 28, 2008
6                                     *    1:35 p.m.
                                      *
7   RICHARD L. McNAIR                 *    Alexandria, Louisiana
                                      *
8   * * * * * * * * * * * * * * * * *

9

10                      CHANGE OF PLEA

11

12  Certified transcript of proceedings before the Honorable
    Dee D. Drell, United States District Judge.
13

14  APPEARANCES:

15  FOR THE GOVERNMENT:      James G. Cowles, Jr.
                             United States Attorney's Office
16                           300 Fannin Street, Suite 3201
                             Shreveport, Louisiana 71101-3068
17
    FOR THE DEFENDANT:       Wayne J. Blanchard
18                           Federal Public Defenders Office
                             102 Versailles Boulevard, Suite 816
19                           Lafayette, Louisiana 70501

20
    REPORTED BY:             Myra Primeaux, RMR, CRR
21                           Post Office Box 348
                             Alexandria, Louisiana 71309-0348
22                           Phone: (318) 442-3080

23

24
    Proceedings recorded by mechanical stenography, transcript
25  produced by computer.

1          THE COURT:  All right.  The matter that's on the

2    docket for this afternoon, the first one, at least, is

3    Criminal Number 07-10030 entitled *United States v. Richard*

4    *L. McNair.*

5       Y'all please make your appearances for the record at

6    this point.

7          MR. COWLES:  Jim Cowles on behalf of the United

8    States, Your Honor.

9          MR. BLANCHARD:  Wayne Blanchard for Richard

10   McNair, and this is Mr. McNair on Your Honor's right.

11         THE COURT:  All right.  How are you, Mr. McNair?

12         THE DEFENDANT:  Fine, sir.  Thank you.

13         THE COURT:  Mr. Blanchard.  It's nice to see all

14   of you here today.

15         MR. BLANCHARD:  Good afternoon.

16         THE COURT:  My appreciation is that the matter is

17   coming on this afternoon for a change of plea.  Is that

18   correct at this point?

19         MR. BLANCHARD:  Yes, Your Honor, it is.

20         MR. COWLES:  Yes, Your Honor.

21         THE COURT:  Are there any filings at this point,

22   Mr. Cowles?

23         MR. COWLES:  Yes, Your Honor.  At this time we

24   will file the executed plea agreement and an executed

25   understanding of rights signed by all parties.

1          THE COURT:  Let me look at those.  Thank you.

2       Are these in the same form that were furnished to

3    chambers earlier?

4          MR. COWLES:  Yes, Your Honor.

5          THE COURT:  Very well.  Mr. McNair, your

6    signature appears on these documents, does it?

7          THE DEFENDANT:  Yes, Your Honor, it does.

8          THE COURT:  And you've had occasion to go over

9    the content of these documents with your attorney?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Do you feel like at this point you

12    need to have any further consult with him about them?

13          THE DEFENDANT:  No, Your Honor.

14          THE COURT:  All right.  Good.  I'm going to be

15    asking you a number of questions about them later, but for

16    the moment, I'll understand that you voluntarily signed

17    these documents.  Would that be right?

18          THE DEFENDANT:  Yes, Your Honor, I did.

19          THE COURT:  Mr. Cowles, I think I may know the

20    answer to this, but I'm obliged to ask you, are there any

21    victims of the offense and is there any issue with the

22    government notifying victims of this hearing, their right

23    to attend?

24          MR. COWLES:  No, Your Honor.

25          THE COURT:  No, there aren't victims?

1          MR. COWLES:  No, there aren't victims.

2          THE COURT:  All right.  Thank you very much.

3      Mr. McNair, I'm sure you've conferred with Mr.

4  Blanchard about the charge against you.  It is my duty,

5  however, to inform you, this afternoon I'm going to be

6  asking you some questions in the case that will be answered

7  after you've promised to tell me the truth.  And that being

8  the case, if your answers are substantively inaccurate, you

9  could be charged with perjury.

10      Now, I'm not telling you that because I think you

11  don't intend to tell me the truth this afternoon, but it's

12  my duty to tell you that so you'll be well informed of the

13  conditions under which you'll respond.  Okay?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you understand that?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Very well.

18      Mr. Blanchard, how does your client intend to plead at

19  this point?

20          MR. BLANCHARD:  Guilty to the indictment, Your

21  Honor.

22          THE COURT:  All right.  Is that correct, Mr.

23  McNair?

24          THE DEFENDANT:  Yes, Your Honor, it is.

25          THE COURT:  Very well.  You're charged in the

1    indictment with escape from United States Penitentiary in

2    Pollock, a federal institution.  Do you understand that?

3                    THE DEFENDANT:  Yes, Your Honor.

4                    THE COURT:  That's the charge, I believe, that

5    you intend to plead to today.

6                    THE DEFENDANT:  Yes, Your Honor.

7                    THE COURT:  All right.  Even though you have been

8    advised, I'm sure, by Mr. Blanchard about your various

9    rights, under Fifth Circuit jurisprudence on what we know

10   as Rule 11, I'm required to address three core concerns

11   before I can accept your guilty plea.

12      The first of those is whether your guilty plea is

13   coerced in any way.  The second is whether you understand

14   the nature of the charge against you.  And the third is

15   whether you understand all the consequences of a plea of

16   guilty.

17      So there are a number of questions that I have to ask

18   you to assure myself that yours is going to be a valid

19   plea.  So if at any time during this conversation that you

20   and I will have, if you don't understand a question or you

21   feel like you need to consult with Mr. Blanchard further,

22   you may stop and turn aside from the microphone and ask him

23   basically anything you want before you answer.  Okay?

24                    THE DEFENDANT:  Yes, sir.

25                    THE COURT:  All right.  Let me get you to raise

1    your right hand.  You can keep your seat.

2              THE DEFENDANT:  Okay.

3         (Defendant sworn.)

4                          EXAMINATION

5    BY THE COURT:

6    Q.   You understand, once again, having been sworn, your

7    answers to my questions will subject you to the penalties

8    of perjury or of making a false statement if you don't

9    answer truthfully?

10   A.   Yes, Your Honor.

11   Q.   All right.  Do you have a problem there?

12   A.   No.  I'm good.  Thank you.

13   Q.   All right.  How much education do you have, Mr.

14   McNair?

15   A.   14 years.

16   Q.   That would be 12 years and a couple of years of

17   college?

18   A.   Yes, sir.

19   Q.   When did you have college and where did you have that

20   education?

21   A.   I started it when I was 18 and pretty much finished it

22   up while I was in prison.

23   Q.   And is that a particular course of study?

24   A.   Liberal arts.

25   Q.   All right.  So I gather -- I gather, but you need to

1  say it, I'm sure you can read and write adequately.

2  A.   Yes, Your Honor.

3  Q.   Are you presently under a physician's care for

4  anything?

5  A.   No, Your Honor.

6  Q.   I know that you're incarcerated, but I have to ask

7  you, have you taken any drugs, medicine, pills, or anything

8  else, for that matter, that would cloud your ability to

9  understand what's going on in these proceedings today?

10  A.   No, Your Honor.

11  Q.   You believe and feel like you're clear-headed this

12  afternoon?

13  A.   Yes, Your Honor.

14  Q.   You understand, of course, why you're in court today?

15  A.   Yes, Your Honor.

16  Q.   All right.  I want you to understand, as I indicated

17  before, you have a right to have the assistance of counsel

18  at all stages of the proceedings against you.  And I need

19  to ask you, do you believe that you've had an adequate

20  opportunity to discuss the charge and the consequences of a

21  plea with your attorney?

22  A.   Yes, Your Honor, I do.

23  Q.   And you're satisfied to have him represent you in this

24  case?

25  A.   Very much so, Your Honor.

1    Q.   All right.

2            THE COURT:   Mr. Blanchard, do you have any doubt

3    as to Mr. McNair's competence to plead at this time?

4            MR. BLANCHARD:   None whatsoever, Your Honor.

5    Q.   All right, Mr. McNair, do you understand that under

6    the Constitution and laws of the United States, you have a

7    right to plead not guilty and to have the charge tried by a

8    jury of 12 people, all of whom would have to agree on a

9    verdict in the case?

10   A.   Yes, Your Honor.

11   Q.   And do you understand that at a trial, you would be

12   presumed to be innocent, and the government would have the

13   burden of proving you guilty beyond a reasonable doubt?   In

14   other words, you would not have to prove your own innocence

15   at the trial.

16   A.   Yes, Your Honor.

17   Q.   Okay.   Do you understand also in the course of a

18   trial, the witnesses for the government would have to come

19   to court and would have to testify in your presence, and

20   your counsel, knowing him as I do, would inevitably

21   confront and cross-examine those witnesses, could object to

22   evidence offered by the government, could offer evidence on

23   your behalf if you chose to have him do so?   You understand

24   those things?

25   A.   Yes, Your Honor.

1    Q.   Likewise, if there were favorable witnesses that you

2    and your attorney wanted at the trial and so forth, and if

3    they didn't want to come, you could use the court's

4    subpoena power to make them appear.  Do you understand

5    that?

6    A.   Yes, Your Honor.

7    Q.   Also, at a trial, while you would have the right to

8    testify if you chose to do so, you would also have the

9    right not to incriminate yourself, not to be compelled to

10   incriminate yourself, the right not to testify, in other

11   words, and that this right would otherwise be guaranteed to

12   you.  Do you understand that?

13   A.   Yes, Your Honor.

14   Q.   Also, you understand that if you had a trial and if

15   you chose not to testify, the jury could not, solely for

16   that account, convict you on the violation being tried.  Do

17   you understand that would be waived by your guilty plea

18   here today?

19   A.   Yes, Your Honor.

20   Q.   All right, Mr. McNair, if you continue in the guilty

21   plea and if I accept it, you understand you will have

22   waived your right to a trial and all the other rights I've

23   just discussed?

24   A.   Yes, Your Honor.

25   Q.   There would be, in other words, no further trial, and

1    I will simply enter a judgment of guilty today and sentence

2    you on a later date on the basis of your guilty plea.   Do

3    you understand that?

4    A.    Yes, Your Honor.

5    Q.    All right.   And if you continue in the guilty plea, do

6    you understand that you will have to waive your right not

7    to incriminate yourself since I will, in a little while,

8    ask you questions about what you did in order to satisfy

9    myself that you're guilty as charged, and you have to

10   acknowledge your guilt here today?

11   A.    Yes, Your Honor.

12   Q.    So are you willing now to waive and give up your right

13   to a trial and the other rights I've just discussed?

14   A.    Absolutely, Your Honor.

15   Q.    And Mr. McNair, has anyone threatened you, leaned on

16   you, or forced to plead guilty, or told you that if you

17   don't plead guilty, further charges will be brought against

18   you or some other adverse action would be taken against

19   you?

20   A.    No one, Your Honor.

21   Q.    You understand, Mr. McNair, that the offense to which

22   you intend to plead guilty, or indicated you intend to

23   plead guilty to, is a felony, and if your plea is accepted,

24   you'll be adjudicated guilty of that offense, and that

25   adjudication may well deprive you of valuable civil rights,

1  such as the right to vote, the right to hold public office,

2  the right to serve on a jury, and the right to possess

3  firearms of any kind?

4  A.   Yes, Your Honor.

5  Q.   Are you willing, then, to plead guilty because you are

6  in fact guilty as charged?

7  A.   Absolutely, Your Honor.

8  Q.   And am I to consider that that is a free and voluntary

9  act on your part?

10  A.   Yes, Your Honor.

11  Q.   All right.  I assume you received a copy of the

12  indictment against you?

13  A.   Yes, Your Honor.

14  Q.   And have you read it yourself?

15  A.   Yes, sir.

16  Q.   Anything about it that you don't understand at this

17  point?

18  A.   No, Your Honor.

19  Q.   All right.  Even though you may think you understand

20  it entirely and may have discussed it with Mr. Blanchard,

21  I'm still required to tell you what the government would

22  have to prove beyond a reasonable doubt if a trial were

23  held on this count in this indictment.

24       As I indicated, the indictment in this case is only

25  one count, and it charges that on or about April 5th, 2006,

1    in this district, the Western District, you knowingly

2    escaped from the United States Penitentiary in Pollock, an

3    institutional facility in which you were lawfully confined

4    at the direction of the Attorney General by virtue of a

5    conviction for the commission of an offense.

6        For you to be found guilty of escape pursuant to 18,

7    United States Code, Section 751(a), the elements of the

8    offense are:  first, that the defendant, you, were in

9    federal custody; that the defendant was in federal custody

10   at the direction of the Attorney General of the United

11   States for a conviction of an offense; third, that the

12   defendant parted, without permission; and fourth, the

13   defendant knew he did not have permission to leave federal

14   custody.  And in this case, "custody" means the detention

15   of an individual by virtue of lawful process or authority.

16       Do you understand those elements?

17   A.   Yes, Your Honor.

18   Q.   You understand the charge against you?

19   A.   Yes, sir.

20   Q.   Do you have any questions about those at this point?

21   A.   No, sir.

22   Q.   All right.  Do you understand the maximum possible

23   penalty under Count 1 is five years in jail, plus a fine of

24   $250,000, or both?

25   A.   Yes, Your Honor.

1    Q.    I assume that you and Mr. Blanchard have gone over the

2    matter of sentencing guidelines in this case?

3    A.    Yes, Your Honor.

4    Q.    He's tried to evaluate for you the application of the

5    guidelines and where they fit if the guidelines apply here?

6    A.    Yes, Your Honor.

7    Q.    Any questions that you have about those that you'd

8    like to address to him at this point?

9    A.    No, Your Honor.

10   Q.    All right, sir.  You understand that the guidelines at

11   this time are advisory in nature; that is, they're not

12   mandatory, and it is the court's burden to sentence you in

13   accordance with the law in general without the guidelines

14   being mandatory?

15   A.    Yes, Your Honor.

16   Q.    You understand that we have the authority, as judges,

17   to make upward or downward departures from those

18   guidelines?

19   A.    Yes, Your Honor.

20   Q.    All right.  And Mr. McNair, under the Sentencing

21   Reform Act which is applicable in this case, you could

22   receive a term of supervised release of not less than one

23   year nor more than one year in length, in addition to any

24   term of imprisonment that the court might impose.

25         You need to also be informed that a violation of the

1   conditions of supervised release at any time during the

2   period of release may result in your being incarcerated for

3   time over and above any period of imprisonment initially

4   ordered by the court.  You understand that so far?

5   A.   Yes, Your Honor.

6   Q.   You need to also be informed that the period of

7   incarceration for a violation of a condition of supervised

8   release could be as much as the full term of supervised

9   release which the court initially ordered, irrespective of

10  the amount of time of supervised release you had

11  successfully completed.  You understand that?

12  A.   Yes, Your Honor.

13  Q.   All right.  Just to state it another way, it means,

14  for example, if you had a year of supervised release and

15  you did fine for six months and then had a violation, you

16  were brought back to court, you could still receive up to a

17  year.  You understand that?

18  A.   Yes, Your Honor.

19  Q.   Okay.  Plea agreements, I will tell you, of course,

20  are permissible.  I have been handed a plea agreement in

21  this case.  And you and the lawyers have a duty to disclose

22  the existence of the agreement, which has occurred, and all

23  the terms of the agreement, which has also occurred.

24      I assume the existence of the plea agreement means

25  that you have some willingness to plead at least because a

1    plea agreement was confected in this case.  Would that be

2    fair?

3    A.   Yes, Your Honor.

4    Q.   I have a couple of things about this plea agreement.

5    Do you have a copy of that there?

6              MR. BLANCHARD:  Yes, Your Honor.  Where do you

7    want him to look?

8              THE COURT:  Particularly paragraph 7.

9    Q.   Mr. McNair, you have read those and you understand

10   paragraph 7?

11   A.   Yes, Your Honor, I do.

12   Q.   That this agreement has an obligation on your part to

13   fully and truthfully debrief with the government, in

14   effect?

15   A.   Yes, Your Honor.

16   Q.   And in exchange for that particular cooperation, the

17   government is prepared to recommend to the court that

18   imprisonment in this case, if any, ought to run

19   concurrently.  Do you understand that that's there?

20   A.   Yes, Your Honor.

21   Q.   All right.  I'm going to ask you something else about

22   that in a minute.

23        Any part about the plea agreement that you don't

24   understand or any part you want to further discuss with Mr.

25   Blanchard?

1    A.    No, Your Honor.

2    Q.    All right, sir.  With regard to the Crime Victims

3    Fund, you need to be informed that upon your conviction,

4    the court has to assess you the amount of $100, which is a

5    total in this case, obviously, of $100, and as a condition,

6    of course, of your plea agreement, that has to be paid by

7    you.  And I have no idea how you're going to do that.

8    Perhaps you have an account set up.  But you understand

9    that that will have to be handled in this particular case

10   in connection with this plea agreement, with this plea?

11   A.    Can that be, like, over a period of time, Your Honor?

12   Q.    Well, let me ask the question of the attorneys.

13            THE COURT:  Is this satisfactorily handled to the

14   government's extent of comment?

15            MR. COWLES:  Yes.  The Bureau of Prisons will

16   take it out of whatever account he may have.

17            MR. BLANCHARD:  They have a financial

18   responsibility program, Your Honor, if he can't pay it.

19   Q.    I want you to understand that's one of the

20   consequences of a plea and it has to happen.

21   A.    Yes, Your Honor.

22   Q.    All right.  And I don't know of any restitution that

23   might appear in the case, but I need to tell you that in

24   any case where restitution is appropriate, restitution

25   would be in addition to any penalties I've discussed with

1    you, and if the court should have you ever have to make

2    restitution in a case, the amount and method of payment is

3    entirely within the discretion of the court.  Do you

4    understand that?

5    A.    Yes, Your Honor.

6    Q.    In this case we mentioned a minute ago your plea

7    agreement does require you to cooperate with the

8    government.  Do you understand that to the extent you do

9    cooperate and fulfill that obligation of the plea

10   agreement, I will examine that matter at sentencing in this

11   case?

12   A.    Yes, Your Honor.

13   Q.    Now, has anybody made any promises to you other than

14   those contained in this plea agreement?

15   A.    No, Your Honor.

16            THE COURT:  Counsel, would you indicate for the

17   record for me, please, whether there are any side

18   agreements whatsoever?

19            MR. COWLES:  None, Your Honor.

20            MR. BLANCHARD:  No, Your Honor.

21   Q.    All right, Mr. McNair, this plea agreement has a

22   provision for the government to make a recommendation for a

23   concurrent sentence.  We've talked about that.  It is

24   likely that after today, your attorney and/or the

25   government may give me some more input on what they think

1   the sentence in this case ought to be.

2        You understand that any recommendation of sentence,

3   either agreed to by your counsel and the United States or

4   not agreed but recommended by either side, is not binding

5   on the court and that you might, on the basis of your

6   guilty plea, receive a more severe sentence than requested

7   or recommended?

8   A.   Yes, Your Honor.

9   Q.   And do you also understand that if the court does not

10  follow the recommendation from any counsel in the case,

11  agreed or not, you would have no right to withdraw your

12  plea of guilty today?

13  A.   I understand that, Your Honor.

14  Q.   Now, aside from that, has anybody made any other

15  prediction or prophecy or promise to you as to what your

16  sentence would be in this case?

17  A.   No, Your Honor.

18  Q.   Because of your guilty plea, has anybody -- well, you

19  understand that the court will sentence you first based

20  upon the calculation of the applicable guideline range.

21  Then we'll consider that range.  We'll consider other

22  departures under the guidelines, and also the sentencing

23  factors in 18 U.S.C. Section 3553(a).  You understand that?

24  A.   Yes, Your Honor.

25  Q.   You fully understand, once again, your sentence,

1   whatever it is, is entirely up to me, not up to your

2   lawyer, not up to the Assistant United States Attorney?

3   A.   Yes, Your Honor.

4   Q.   All right.   Then you understand you have a right, of

5   course, to appeal the sentence that I impose upon you.   But

6   do you understand that the failure of the court to adhere

7   to any sentencing recommendation by any attorney in the

8   case, even the one in the plea agreement, is not a basis,

9   again, for setting aside your guilty plea?

10  A.   Yes, Your Honor.

11  Q.   All right.   Mr. McNair, do you understand that if the

12  court accepts the plea agreement in this case, to the

13  extent that there are recommendations here or to the extent

14  the government indicates this is the only charge in the

15  case, all those dispositions, to the extent they're

16  required to be, will appear in the judgment in this case?

17  A.   Yes, Your Honor.

18  Q.   Okay.

19          THE COURT:   Mr. Cowles, the burden is on you,

20  sir.   Do you have a witness to present at this point?

21          MR. COWLES:   Yes, Your Honor.   I call Glenn

22  Belgard.

23          THE COURT:   Stand and raise your right hand.

24      (Witness sworn.)

25          THE COURT:   Please be seated.   Answer questions

1    from the attorneys.

2                         DIRECT EXAMINATION

3    BY MR. COWLES:

4    Q.   Would you please state your name, spell your last

5    name, and state your employment?

6    A.   My name is Glenn Edward Belgard.  The spelling of my

7    last name, B-e-l-g-a-r-d.  I'm a Deputy United States

8    Marshal in the Western District of Louisiana.

9    Q.   And are you familiar with the investigation which led

10   to the charge on Mr. McNair of this escape?

11   A.   Yes, I am.

12   Q.   All right.  Was Mr. McNair serving a prison sentence

13   in federal custody at the Bureau of Prisons -- at the

14   United States Penitentiary in Pollock, Louisiana?

15   A.   Yes, he was.

16   Q.   And on April 5th of that year, did he escape from that

17   custody?

18   A.   Yes, he did.

19   Q.   And at the time he escaped, was he serving a sentence

20   under the authority of the Attorney General -- actually,

21   what he was serving was a state sentence out of North

22   Dakota; is that right?

23   A.   That's correct.  Under an agreement, he was under the

24   Attorney General of the United States.

25   Q.   Right.  And the Attorney General of the United States,

1   through the Bureau of Prisons, had agreed to allow Mr.

2   McNair to serve that state sentence in the federal

3   facility?

4   A.   That is correct.

5   Q.   And that was an agreement between the Bureau of

6   Prisons and the state of North Dakota?

7   A.   That is correct.

8   Q.   And on April 5th, he departed that institution without

9   permission; is that correct?

10  A.   That is correct.

11  Q.   And when he was subsequently -- that was on April 5 of

12  2006; is that right?

13  A.   Yes, sir.

14  Q.   And he was arrested in October of 2007 in New

15  Brunswick, Canada; is that right?

16  A.   That's correct, October 25th, 2007.

17  Q.   And that's when he was arrested by the Royal Canadian

18  Mounted Police?

19  A.   Yes, sir.

20  Q.   And subsequently transferred back to the United States

21  to Pollock?

22  A.   That's correct.

23  Q.   And you've actually interviewed him after his arrest

24  in October?

25  A.   I have.  As a matter of fact, I traveled to meet the

1   RCMP at the port of entry.

2   Q.   And at that time, Mr. McNair admitted that he escaped

3   and he knew he shouldn't have?

4   A.   Yes, he did.

5            MR. COWLES:  That's all I have, Your Honor.

6            THE COURT:  Any questions, Mr. Blanchard?

7            MR. BLANCHARD:  No, Your Honor.

8            THE COURT:  All right.  The court has no

9   questions.  You may step down, sir, and return to your

10  seat.

11       Mr. McNair, you've heard Deputy Marshal Belgard talk

12  about this.  Do you agree with what he said?

13           THE DEFENDANT:  Absolutely, Your Honor.

14           THE COURT:  All right, then.  Mr. McNair, I read

15  to you earlier the elements of the offense in this case.

16  Do you need me to do that again?

17           THE DEFENDANT:  No, Your Honor.

18           THE COURT:  Is there anything else about the

19  elements, about the charge that you think you don't

20  understand and you'd like me to go over again?

21           THE DEFENDANT:  No, Your Honor.

22           THE COURT:  Do you understand each of those

23  elements that I read to you and agree that you've committed

24  each and every one?

25           THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  All right.  Very well.  Having heard,

2     then, the court's explanation of all the elements and also

3     the maximum penalty and all the rights given up by a plea

4     of guilty and all the consequences of that plea, I ask you,

5     Mr. McNair, do you wish to continue in your guilty plea?

6          THE DEFENDANT:  Absolutely, Your Honor.

7          THE COURT:  Then I ask you formally, how do you

8     plead to the one count of the indictment?

9          THE DEFENDANT:  I plead guilty, Your Honor.

10          THE COURT:  All right.  Thank you.  I'm satisfied

11     that Mr. McNair fully understands the nature of the charge

12     and the consequences of a plea of guilty, and I find that

13     the plea is voluntarily and knowledgeably entered, and the

14     plea is accepted as entered.  And likewise, the written

15     plea agreement is accepted in accordance with Rule

16     11(c)(4).

17       Now, with regard to sentence in this case, the

18     sentencing in the case, I am fixing the sentencing date for

19     May 12th, 2008 at 9:30 in the morning.

20          MR. COWLES:  Your Honor --

21          THE COURT:  There was a request made -- yes.

22          MR. COWLES:  I have a trial scheduled to start

23     that day in Shreveport.  Is it possible to --

24          THE COURT:  Well, let me say this.  I'm going to

25     leave it on the calendar for that date for the moment.

1              MR. COWLES:  All right.

2              THE COURT:  I received a request both from Mr.

3     Blanchard prior to today and also by letter from Mr. McNair

4     which I have here -- It's a handwritten letter.  It was

5     handed to me a little while ago.  I'm going to hand it to

6     the clerk to put in the record and remain under seal --

7     with a request for an earlier sentencing date.  I'm not

8     prepared to sentence Mr. McNair today, even though my

9     appreciation is that he might be willing to waive

10    presentence investigation.

11         It is my view that to simply allow that to occur would

12    be an exceptional rather than a usual circumstance, and I

13    don't see anything in this case that should suggest to

14    accept a waiver of the time period, particularly since Rule

15    32 really requires that I have enough information on the

16    defendant and his background to properly sentence him under

17    the guidelines and the statutes, and I just simply don't

18    have that, so I'm setting it for May 12th.

19         I will indicate that if the presentence report is

20    concluded at a time short of the usual, I would entertain a

21    refixing of that date.  I understand we have a conflict

22    there anyway.

23         So the simple answer is, Counsel, you just have to be

24    in touch with the court once the presentence investigation

25    is complete to determine a possible earlier refixing date,

1    and that's the best I can do today.

2              MR. BLANCHARD:  Yes, Your Honor.

3              THE COURT:  All right, Mr. McNair, the court will

4    require you to work with Mr. Blanchard who is to assist you

5    in being certain that information furnished to Probation

6    Services and to this court is accurate.

7        I don't know how long you've been incarcerated at this

8    point or whether you've had occasion to file tax returns,

9    but to the extent that you have them or they have been

10   filed, you'll be required to furnish your last five years'

11   tax returns to Probation Services within 45 days from

12   today, and if you don't have them, to sign such documents

13   as may be necessary to allow those returns to be obtained

14   from the Internal Revenue Service.  Are you with me on

15   that?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  All right.  And of course, Mr. McNair

18   is presently incarcerated for another offense, so as I

19   appreciate it, the issue of release is not an issue today.

20   He'll be, of course, detained.

21       Anything else in this particular matter?

22             MR. COWLES:  No, Your Honor.

23             THE COURT:  Mr. Blanchard?

24             MR. BLANCHARD:  No, Your Honor.

25             THE COURT:  All right.  Then that will conclude

1    the McNair matter.   We're going to be recessed for a few

2    minutes pending the next matter.

3            Mr. McNair, in the meantime, keep it cool.

4                    THE DEFENDANT:   Thank you, Your Honor.

5                        (End of proceedings at 2:02 p.m.)

1                          C E R T I F I C A T E

2

3          I, Myra Primeaux, Official Court Reporter, do hereby

4     certify that the foregoing pages numbered 1 through 26 do

5     constitute a true and correct record of proceedings had in

6     said Change of Plea to the best of my ability and

7     understanding.

8          I certify that the transcript fees and format comply

9     with those prescribed by the court and the judicial

10    conference of the United States.

11         Subscribed and sworn to this 9th day of March, 2009.

12

13                              s/ Myra Primeaux
                                _____

14                              MYRA PRIMEAUX, RMR, CRR
                                U.S. Court Reporters Office
15                              Post Office Box 348
                                Alexandria, Louisiana 71309
16                              Phone: (318) 442-3080

17

18

19

20

21

22

23

24

25