```
 1                   UNITED STATES DISTRICT COURT

 2                   WESTERN DISTRICT OF LOUISIANA

 3                        ALEXANDRIA DIVISION

 4    UNITED STATES OF AMERICA        *     CRIMINAL ACTION
                                      *     NUMBER 07-10030-01
 5                                    *
      vs.                             *     April 14, 2008
 6                                    *     11:11 a.m.
                                      *
 7    RICHARD L. McNAIR               *     Alexandria, Louisiana
                                      *
 8    * * * * * * * * * * * * * * * * *

 9

10                             SENTENCING

11

12    Certified transcript of proceedings before the Honorable
      Dee D. Drell, United States District Judge.
13

14    APPEARANCES:

15    FOR THE GOVERNMENT:        James G. Cowles, Jr.
                                 United States Attorney's Office
16                               300 Fannin Street, Suite 3201
                                 Shreveport, Louisiana 71101-3068
17
      FOR THE DEFENDANT:         Wayne J. Blanchard
18                               Federal Public Defenders Office
                                 102 Versailles Boulevard, Suite 816
19                               Lafayette, Louisiana 70501

20
      REPORTED BY:               Myra Primeaux, RMR, CRR
21                               Post Office Box 348
                                 Alexandria, Louisiana 71309-0348
22                               Phone: (318) 442-3080

23

24
      Proceedings recorded by mechanical stenography, transcript
25    produced by computer.
```

```
 1            THE COURT:  Good morning to you-all.  This is
 2   United States v. Richard Lee McNair, Criminal Number
 3   07-10030.  The matter is called for sentencing at this
 4   time.
 5       Would y'all make your appearances, please?
 6            MR. COWLES:  Good morning, Your Honor.  Jim
 7   Cowles on behalf of the United States.
 8            MR. BLANCHARD:  And Wayne Blanchard for Richard
 9   McNair, Your Honor.
10            THE COURT:  All right.  I see Mr. McNair here
11   with you.
12       Good morning, Mr. McNair.
13            THE DEFENDANT:  Good morning, Your Honor.
14            THE COURT:  Everyone ready to proceed at this
15   point?
16            MR. COWLES:  Yes, Your Honor.
17            MR. BLANCHARD:  Yes, Your Honor.
18            THE COURT:  All right.  And we moved the
19   sentencing date forward at this point, again, I believe by
20   everyone's request.  Is there any objection to the date;
21   that is, to conduct the sentencing at this time?
22            MR. COWLES:  No, Your Honor.
23            MR. BLANCHARD:  No, Your Honor.
24            THE COURT:  All right. Is there any other reason
25   why sentence shouldn't be imposed at this time?
```

1           MR. COWLES:  No, Your Honor.

2           MR. BLANCHARD:  No, Your Honor.

3           THE COURT:  Then have the defendant and defense

4   counsel and the government received and reviewed a copy of

5   the presentence report?

6           MR. COWLES:  Yes.

7           MR. BLANCHARD:  Yes, Your Honor.

8           THE COURT:  And are there any objections

9   regarding the timing or receipt of the presentence report?

10          MR. COWLES:  Not from the government, Your Honor.

11          MR. BLANCHARD:  Not regarding the timing or

12  receipt, no, Your Honor.

13          THE COURT:  Okay.  You know that's a different

14  question from the other one.

15       And Mr. Blanchard, you and your client have discussed

16  the presentence report.  Would that be fair?

17          MR. BLANCHARD:  We have, Your Honor.

18          THE COURT:  And Mr. McNair, do you feel like you

19  need any additional time to do that with Mr. Blanchard?

20          THE DEFENDANT:  No, Your Honor.  Thank you.

21          THE COURT:  All right.  I'm not sure I actually

22  had y'all introduce yourselves.  Mr. Cowles, you're here

23  for the government.

24          MR. COWLES:  Yes, sir.

25          THE COURT:  And I see Mr. Belgard at the table

1    next to you.  Obviously Mr. Blanchard and Mr. McNair are
2    here.
3         Now, objections, Mr. Blanchard, from you as to the
4    factual statements contained in the presentence report.
5              MR. BLANCHARD:  Not as to the factual statements,
6    Your Honor.
7              THE COURT:  All right.  What about the
8    government?
9              MR. COWLES:  None, Your Honor.
10             THE COURT:  Any errors, additional corrections in
11   the presentence report, or alterations or additions of any
12   kind from either side that need to be made to make the
13   presentence report accurate?
14             MR. COWLES:  Not from the government, Your Honor.
15             MR. BLANCHARD:  No, Your Honor.
16             THE COURT:  All right.  And as, then, the
17   defendant, defense counsel, and the government don't have
18   objections to the factual statements contained in the
19   presentence report and as I find those statements to be in
20   harmony with the evidence and the information presented,
21   I'll adopt those factual statements as my findings of fact
22   in this case.
23        Now then, Mr. Blanchard, do you have anything that
24   you'd like to say at this point in mitigation of
25   punishment?

1          MR. BLANCHARD:  Yes.  First of all, Your Honor,
2    last week while I was in trial, I believe I got an addendum
3    saying that there were no objections to the presentence
4    investigation.  But to make it clear that in my presentence
5    memorandum, that I did object to the suggestion that there
6    should be an upward departure, so I want that on the
7    record.
8          THE COURT:  Yes.  And I noted that.  I noted your
9    objection to that.  In fact, I noted specifically your
10   argument for a specific sentence, I assume in accordance
11   with *Gall*.  That gives you the opportunity to do that.  And
12   you, if I recall correctly, asked me to run the sentence
13   concurrent, if I read it correctly.
14         MR. BLANCHARD:  I did, Your Honor.  And you know,
15   there are no other reasons other than what I stated in my
16   memorandum, but I would like to state, you know, some of
17   those reasons.
18       And those reasons are, first of all, the fact that he
19   did not resist removal or extradition from Canada.  You
20   know, it seems to me that it would have been -- if you were
21   looking for another opportunity to escape, the best thing
22   would have been to resist and to resist extradition and to
23   remain in a Canadian jail.
24       He also wanted to dispose of this, Your Honor, and did
25   not take my suggestion that I thought, arguably, that this

1    should have been an assimilated defense, that he is not
2    serving a federal sentence; he was serving a sentence for
3    the state of North Dakota.  And with that in mind, I urged
4    him to ask me to -- or to allow me to move to dismiss the
5    indictment based on that, that it should have been an
6    assimilated offense.  He didn't want to do that.  I think
7    that all goes towards acceptance of responsibility.
8         He did not want to go to trial.  Again, I think if
9    you're looking for an opportunity to escape or if you're
10   serving a life sentence, just to get out of the prison, I
11   mean, one way to do it is to go to trial, to have to be
12   transported every day.
13        So I think those are all things that you can take into
14   account in going along with the suggestion of the plea
15   agreement, the non-binding recommendation from the United
16   States that this should be a concurrent sentence.  He is
17   already serving a life sentence.  I think everybody has to
18   have a little hope that if they change their behavior,
19   maybe there's a chance that he would be -- you know, have
20   some short time of freedom and not die inside of a prison,
21   Your Honor.  And with all of that in mind, I would urge you
22   to impose a concurrent sentence.
23            THE COURT:  All right.  Thank you.  I want to be
24   sure you haven't just created a problem here, Mr.
25   Blanchard, with regard to potential defenses in the case.

1     My pretrial understanding in this matter was that there
2     were compacts and agreements between the state and the
3     government pursuant to which Mr. McNair was properly
4     incarcerated in the first place.
5             MR. BLANCHARD:  There is.  I have those.
6             THE COURT:  Pardon me?
7             MR. BLANCHARD:  There is.  I have the paperwork,
8     Your Honor.
9             THE COURT:  I mean, even at this late date, what
10    are you doing with that legal defense?  You indicated you
11    had --
12            MR. BLANCHARD:  I'm just saying that he waived
13    it, Your Honor, and that that's something that you
14    should -- you can take into account in giving him a
15    concurrent sentence.
16            THE COURT:  All right.
17       Mr. McNair, you understand what he's just said?
18            THE DEFENDANT:  Yes, sir.  And I concur with what
19    he said, that I don't want to fight it anymore, you know.
20    I've caused enough problems around here, you know, with
21    what I did, and I understand that now.  And that's why I
22    just want to plead guilty and get to the ADX and do my
23    time, Your Honor.
24            THE COURT:  Okay.  Any comment from the
25    government at this point with regard to that?

```
 1              MR. COWLES:  No, Your Honor.
 2              THE COURT:  All right.  Very well.
 3         Anything else, Mr. Blanchard?
 4              MR. BLANCHARD:  There is one other thing I wanted
 5    to say, Your Honor, and that is that he did debrief
 6    extensively with Deputy Marshal Belgard and with the
 7    Pollock officials about how he got out of Pollock and,
 8    again, we would ask you to take that into consideration as
 9    a reason for imposing a concurrent sentence.
10              THE COURT:  All right.  Thank you.
11         How about you, Mr. McNair, do you have anything that
12    you'd like to say or offer in mitigation of punishment?
13              THE DEFENDANT:  Yes, Your Honor.  In talking to
14    Mr. Belgard, Marshal Belgard --
15              THE COURT:  Let me get you to keep your seat so
16    you can use the microphone.
17              THE DEFENDANT:  In talking to Marshal Belgard, I
18    didn't realize the problems that this caused in the
19    community, the fear that it caused the people.  When you do
20    something like this, I don't think you think about that.
21    You know, that's not something that enters your mind.  You
22    just -- I was angry and I lashed out.
23         And I didn't realize the little lady that, you know,
24    came home and her front door was open, she was fearful that
25    I had entered her house.  And that doesn't enter your mind
```

1  when you do something like this.  And that's why I want to
2  take responsibility for this and I want to get it over with
3  and, you know, not hurt the community anymore.  That's one
4  of the things that you don't think about, you know.
5            THE COURT:  Let me ask you a question.
6            THE DEFENDANT:  Anything, Your Honor.
7            THE COURT:  You keep trying to get out.
8            THE DEFENDANT: (Nods head up and down.)
9            THE COURT:  How do you mean you don't think about
10  that?  I mean, you keep trying to go, keep trying to run.
11            THE DEFENDANT:  Nobody ever brought it to my
12  attention the cost and the problems that it caused the
13  community until I talked to Marshal Belgard.
14       Marshal Belgard is a tremendous asset to this
15  community.  He treated my family with respect.  He did his
16  job in a respectful manner, and he pointed out, you know,
17  some of the things that you don't look at.  I mean, like I
18  say, that little lady, I don't know who she was, but when
19  she came home and her front door was open -- I didn't enter
20  her house.  I didn't go in anybody's home -- and when she
21  came home and she found her front door open and she was
22  scared to death, I think of what my mom or my family would
23  have thought of, and you don't think about that.
24       And I was very angry with the way North Dakota had
25  treated me on my hearing and they kind of led me along.

1   And that's no excuse.  You know, that's no excuse.  I'm
2   getting kind of off the beaten path here.
3       I take full responsibility for what I did, and I'll
4   spend the rest of my life in the ADX one way or the other,
5   so, you know, it's part of life, man.
6           THE COURT:  All right, sir.
7           THE DEFENDANT:  Thank you.
8           THE COURT:  Anything from the government before
9   sentence is imposed?
10          MR. COWLES:  No, Your Honor.
11          THE COURT:  All right.  With regard to a
12  statement of reasons for imposing sentence, I find that the
13  applicable offense level is 11.  The applicable criminal
14  history is category Roman numeral V.  The applicable
15  guideline ranges are 24 to 30 months incarceration, two to
16  three years of supervised release, with probation not being
17  applicable, and a 2,000 to $20,000 fine.  Restitution,
18  likewise, is not applicable, but a $100 special assessment
19  is applicable.
20      And the reasons for those guideline determinations are
21  set forth in the presentence report which I find reasonably
22  addresses the criminal conduct in question, which
23  accurately reports the applicable statutory sentences, and
24  which accurately reports the correct term of supervised
25  release and fine range.

1    And while I'm there, I am going to order that the
2    presentence report be amended to correct Mr. Blanchard's
3    observation, that he did object to -- whether it's actually
4    an objection or a *Gall* argument, either way, he certainly
5    gave us proper input on that, so I will call those
6    objections because he labeled them that and we'll note
7    that.
8    With regard to deviation from the guidelines, what I'm
9    going to do requires some comment because I truthfully
10   considered sending a notice out in this case about an
11   upward departure.  And that's because one thing that's not
12   dealt with in the presentence report, to a large degree, is
13   the time gap between Mr. McNair's escape and his return to
14   custody, the fact that he went around, evaded, went to
15   Canada, had to be caught in Canada and, yes, did waive
16   extradition.  But frankly, considering -- and I decided not
17   to exceed the guidelines in the case because it, frankly,
18   probably doesn't make any difference, and everybody wanted
19   to get this case resolved and completed, so sending the
20   notice would only have delayed the sentence in the case.
21   And the sentence I'm going to impose is otherwise adequate
22   to handle the matter before us because the guidelines do
23   contemplate escape in this regard, and also, 3553(a)
24   factors don't otherwise yield compelling consideration not
25   to apply the guidelines.

1      So in imposing this sentence, I've noted the positions
2  of everybody involved.  I reviewed the documents, of
3  course, and my role is to weigh all of the considerations
4  and enter a sentence which is just under the circumstances,
5  including the guidelines and the factors in 18 U.S.C.
6  Section 3553(a).  And as I indicated, the sentencing
7  considerations in this particular case are taken into
8  account by the guidelines.
9      And pursuant, then, to the Sentencing Reform Act of
10 1984 and *United States v. Booker*, the defendant, Richard
11 Lee McNair, is sentenced to serve 30 months in the custody
12 of the United States Bureau of Prisons.  Pursuant to the
13 provisions of Sentencing Guideline 5G1.3(a), this sentence
14 shall run consecutively to the imprisonment sentence the
15 defendant is currently serving.  Restitution is not
16 applicable in this case.  And considering the defendant's
17 financial condition and lengthy terms of incarceration, no
18 fine is ordered.  And as Mr. McNair does pose a future risk
19 of illegal substance abuse, the mandatory drug testing
20 condition is ordered.  The defendant is also required to
21 cooperate in the collection of DNA as directed.
22     With regard to the consecutive sentence, let me make
23 it clear for the record that that sentence is imposed
24 consecutive to any state sentence or federal sentence he is
25 presently serving or ordered to serve.

1          Okay.  Upon release from imprisonment, the defendant
2     is placed upon a three-year term of supervised release.
3     And while on supervised release, Mr. McNair shall comply
4     with the standard conditions adopted by the court and the
5     following special conditions:
6          One, the defendant must apply any federal income tax
7     refund received during the period of supervision toward any
8     unpaid, court-ordered monetary obligations;
9          Second, the defendant shall be subject to financial
10    disclosure throughout the period of supervised release and
11    shall provide U.S. Probation with all requested financial
12    documentation.  He is required to report all household
13    income to U.S. Probation as requested;
14         Three, the defendant shall undergo a substance abuse
15    evaluation and/or testing as directed by U.S. Probation;
16    and
17         Four, the defendant shall undergo a mental health
18    evaluation and/or treatment sessions as deemed necessary by
19    U.S. Probation.
20         It's additionally ordered that the defendant pay a
21    special assessment of $100 to be due immediately.
22         The interest requirement is simply not applicable, but
23    to the extent that it would otherwise be applicable, it
24    would have been waived anyway.
25         I realize that the imposition of supervised release in

1   this case may seem odd, unusual, or silly, but it is
2   certainly possible at some point, because of information
3   not of my knowledge, that Mr. McNair's life sentence could
4   otherwise be commuted some kind of way or pardoned, so in
5   the event he is released prior to the conclusion of his
6   sentence, the supervised release would then, of necessity,
7   kick in.
8        With regard to appeal, Mr. McNair, I need to advise
9   you that you can appeal your conviction if you believe your
10  guilty plea was somehow unlawful or involuntary or if there
11  is some other fundamental defect in the proceedings that
12  was not waived by your guilty plea.
13       You also have a statutory right to appeal your
14  sentence under certain circumstances, particularly if you
15  think the sentence is contrary to law.  And with few
16  exceptions, any notice of appeal must be filed within ten
17  days of judgment being entered in your case.  If you're
18  unable to pay the cost of an appeal, you may apply for
19  leave to appeal in forma pauperis, and if you so request,
20  the clerk of court will prepare and file a notice of appeal
21  on your behalf.
22       Now, as to imprisonment, Mr. McNair, of course, is
23  remanded back to the custody of the United States Marshal
24  to begin service of the sentence in the case.
25       There was a plea agreement in the case.  Are you

```
 1   satisfied, Mr. Blanchard, the government has fully complied
 2   with all obligations at this point?
 3              MR. BLANCHARD:  I am, Your Honor.
 4              THE COURT:  Are there any motions at this point
 5   from the government or otherwise?
 6              MR. COWLES:  No, Your Honor.
 7              THE COURT:  All right.  Then, I think everything
 8   in this case is concluded.
 9              MR. BLANCHARD:  I do object to the sentence as
10   being unreasonable, Your Honor.
11              THE COURT:  I understand.
12      Mr. McNair, the odd part is, by all reports you're a
13   very intelligent, talented guy, with otherwise great
14   potential.  It's going to be difficult for you to do
15   anything with that, probably, where you're going, but, you
16   know, I just would like for you to have a better life even
17   inside and figure out a way to live out your days in some
18   peace, the best way I can figure it.
19              THE DEFENDANT:  Thank you, Your Honor.
20              THE COURT:  All right.  We're adjourned.
21                 (End of proceedings at 11:28 a.m.)
22
23
24
25
```

```
 1                        C E R T I F I C A T E

 2

 3        I, Myra Primeaux, Official Court Reporter, do hereby

 4   certify that the foregoing pages numbered 1 through 15 do

 5   constitute a true and correct record of proceedings had in

 6   said Sentencing to the best of my ability and

 7   understanding.

 8        I certify that the transcript fees and format comply

 9   with those prescribed by the court and the judicial

10   conference of the United States.

11        Subscribed and sworn to this 11th day of March, 2009.

12

13                              s/ Myra Primeaux

14                              MYRA PRIMEAUX, RMR, CRR
                                U.S. Court Reporters Office
15                              Post Office Box 348
                                Alexandria, Louisiana 71309
16                              Phone: (318) 442-3080

17

18

19

20

21

22

23

24

25
```